CENTRAL SOUTHWEST OIL CORPO-
RATION, a New Mexico corpo-
ration, Plaintiff,

v.

BELL PETROLEUM COMPANY, a Cali-
fornia corporation, Defendant.

Civ. No. 9094.

United States District Court,
D. New Mexico.

Aug. 24, 1972.

S. B. Christy IV, Jennings, Christy &
Copple, Roswell, N. M., for plaintiff.

Don G. McCormick, McCormick, Paine
& Forbes, Carlsbad, N. M., for defend-
ant.

## MEMORANDUM OPINION

MECHEM, District Judge.

The plaintiff corporation, managed by Thomas Allen, took an assignment of Federal Oil & Gas Lease No. NM–12257 containing about 1,720 acres, which were located entirely within the high water line of McMillan Reservoir, Eddy County, New Mexico.

The lease contains a Bureau of Reclamation restriction which prohibits drilling below the 3,270-foot contour line, which is 300 feet above the high water line.

The restriction against drilling prevents the drilling of any well within almost a mile of the exterior boundaries of Federal Lease NM–12257.

Any oil or gas underlying Federal Lease NM–12257 would have to be recovered by directional drilling or unitization. Directional drilling increases the element of risk of recovery and would markedly increase the cost of drilling. Unitization may or may not be possible and also adds a greater risk to the possibility or time of recovery from the lease.

Plaintiff offered this lease by circular letter to a variety of prospects on September 21, 1970, which solicitation contained a plat of the area but did not mention the drilling restriction.

About September 23rd and 29th, 1970, defendant corporation, by R. J. Tingle, called Thomas Allen about the lease, in which conversations Tingle was advised, if he hadn't already found out, that the acreage was within the McMillan Reservoir site. Allen says that he read the

drilling restriction to Tingle on the 23rd or 29th. Tingle says he did not. It would appear, however, that Tingle could have no way of knowing whether all or only a small part of the lease would be restricted for drilling without having the restriction and plats of the lease and reservoir area before him.

By letter of September 29, 1970, defendant offered to purchase the lease for $34,400.00 with an overriding royalty to the seller, dependent upon plaintiff furnishing merchantable title to the lease. The defendant by this letter gave itself 10 days from delivery to it of the necessary documents from which to determine if the title was merchantable and accept plaintiff's title. Payment was to be made January 1, 1971 if title was accepted by defendant. If title was not merchantable the defendant was to immediately return all documents to the plaintiff.

This offer was accepted by plaintiff on October 3, 1970. Title documentation was sent to defendant about October 14, 1970, and was received October 15, 1970, thus setting October 25, 1970, as the date for acceptance by defendant if title was found to be merchantable.

The defendant did not act within the 10-day period after it was furnished title documentation, although R. J. Tingle attempted on or about October 22, 1970, to contact Thomas Allen who was then hospitalized in Galveston. They did talk on October 24, 1970 but the record is silent as to the subject of this conversation.

Allen was in and out of the hospital for some time around this period but he was in Roswell on weekends and other days when necessary to take care of business.

Defendant returned the papers to plaintiff on November 24, 1970, and rejected the title as not merchantable because of the drilling restriction.

About January 11, 1971, plaintiff tentatively assigned the lease in question to Max Wilson for resale, who in turn offered it for sale by a circular offering at about the same price which defendant had originally agreed to pay. This assignment was limited by oral limitation from Allen to Wilson for sale subject to approval of the defendant.

Tingle and Allen conversed with one another on the telephone in the Spring of 1971, to see if it would be possible to lift or ease the drilling restriction. The subject of these conversations was discussed more than once.

Also about this same time Tingle called Allen with the proposition that he be given an option on the lease in order to test the conclusiveness of the drilling restriction with the Bureau of Reclamation or the Department of the Interior.

Allen testified that he made a telephone demand on Tingle on March 3, 1971 to pay for the lease.

The parties were not prompt nor timely about performance of the contract. They did not act in a businesslike manner in the communication of intent or position as to the performance of the contract. Allen did not re-tender the title documents to Tingle after their return to Allen.

By letter dated July 29, 1971, plaintiff's attorney S. B. Christy, IV, made demand on defendant to perform the contract.

The contract is not ambiguous. It calls for delivery of merchantable title. The title was not merchantable as the drilling restriction in the lease imposed an encumbrance over the entire acreage of the lease and the area surrounding which would make any testing for, or recovery of, underlying oil or gas unnecessarily difficult or expensive, if not impossible.

The contract required the defendant to accept the agreement within 10 days of receipt of title documentation if it was satisfied with the title. If the title was found not merchantable by defendant, the defendant was to return the title documentation immediately. The agreement did not impose any obligations on defendant to communicate with

plaintiff within a definite time unless it sought to purchase the lease.

Time is of the essence in an oil and gas contract even when not expressed, but it appears these parties did not so treat it. The defendant was only required to accept, not reject, by October 25, 1970. There was no acceptance during the ten-day period and defendant rejected plaintiff's title and returned the title documentation in compliance with the parties' interpretation of the contract.

Judgment will be entered consistent with this opinion.